**Roy C. WILKIN, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 85–6389.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 1986.

Decided Feb. 9, 1987.

Bruce Hochman, Beverly Hills, Cal., for plaintiff-appellant.

Robert Bernstein and Murray S. Horwitz, Washington, D.C., for defendant-appellee.

Before SNEED and SCHROEDER, Circuit Judges, and WILLIAM D. BROWNING,* District Judge.

WILLIAM D. BROWNING, District Judge:

Wilkin appeals from the dismissal of his complaint and the granting of the United States' motion for summary judgment on its counterclaim for back taxes and penalties. Wilkin is an American citizen who resided and practiced dentistry in Canada from 1962 until 1973. During the period he was residing in Canada, Wilkin invested in a number of Canadian securities, bought on the margin with only a 10 percent cash investment.[1] Wilkin maintained his United States citizenship and filed annual tax returns with the U.S. Internal Revenue Service while he was residing in Canada.

Wilkin did not, however, file quarterly Interest Equalization Tax (IET) returns for any of his Canadian securities investments. The IET, 26 U.S.C. § 4911 *et seq.*, was an excise tax on foreign investments in effect from 1963 until 1974.[2] After his return to the United States, Wilkin was audited by the IRS and found liable for IET assess-

ments and penalties for the years 1967 through 1972. The applicable IET rate varied over the years in question but averaged about 15 percent. Wilkin paid the assessed IET and penalty for the year 1968, sought an administrative refund, and then brought this action for a refund.

The issues presented on appeal are solely questions of law which this Court reviews de novo. *Wallin v. Commissioner of Internal Revenue*, 744 F.2d 674, 676 (9th Cir.1984).

Wilkin's main argument on appeal is that the IET should have been computed based on his actual 10 percent cash investment rather than based on the aggregate purchase price of the securities. Under the IET statute, the tax imposed is to be a specified percentage of the "actual value of the stock." 26 U.S.C. § 4911(b). The term "actual value" is not defined in the statute or by pertinent regulation. Wilkin contends that in his situation, computation of the IET based on the aggregate purchase price of the securities produces the "economically absurd result" of a tax assessment that is greater than his actual cash investment.

The concern of the Court, however, must be with the legal validity, not the economic logic, of the disputed IET assessment. While the IET statute does not explicitly define the term "actual value," it is a well established principle of statutory construction that words used in a statute, unless otherwise defined, are to be given their ordinary everyday meaning. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *Crane v. Commissioner*, 331 U.S. 1, 6, 67 S.Ct. 1047, 1050, 91 L.Ed. 1301 (1947); *Brandes v. United States*, 783 F.2d 895,

---

* The Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation.

1. The securities were purchased through Canadian brokerage companies and on Canadian exchanges by means of a margin account which allowed Wilkin to pay ten percent of the market price in cash and borrow the balance from the brokerage firm.

2. The IET rate was reduced to zero by Presidential Executive Order No. 11766 dated January 29, 1974, 39 Fed.Reg. 3807 (1974), and was repealed altogether by the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1814, §§ 1904(a)(21) and 1904(d).

896–97 (9th Cir.1986). There can be little doubt that the everyday meaning of "the actual value of the stock," would be the market price or monetary worth of the securities, not the investor's equitable interest. *See Webster's Third New International Dictionary of the English Language* 2530 (1981).

This interpretation is supported by reference to the IET's legislative history in which it is stated that, "actual value is determined by the consideration paid by a purchaser in an arm's length transaction." H.R.Rep. 1046, 88th Cong., 1st Sess., 1964–2 Cum.Bull. 708, 724. It is axiomatic in tax law, and indeed in the general law of contracts, that consideration is not only money or other property actually transferred, but also promises to pay in the future. The consideration given by Wilkin for the Canadian securities in question was his 10 percent cash investment *and* the 90 percent he borrowed from the brokerage house to finance the purchase. In other words, "actual value of the stock will normally be ... the price at which the purchase was effected." H.R.Rep. No. 1046, 1964–2 Cum.Bull. at 725.

■ Wilkin further contends that the IET should not be applied to the entire price of his Canadian securities purchases because he could have limited his tax liability to the value of the money actually transferred if he had bought the securities either as the sole beneficiary of a Canadian trust or as a limited partner of a foreign partnership. Whether or not the use of these alternate mechanisms for making his investments would have resulted in a lesser IET assessment, however, is of no consequence because Wilkin did not in fact do so. He purchased the securities as an individual taxpayer and having done so must accept the resulting tax consequences, whether contemplated or not. *See Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974); *Lomas Santa Fe, Inc. v. Commissioner,* 693 F.2d 71, 73 (9th Cir.1982); *Gray v. Commissioner,* 561 F.2d 753, 760 (9th Cir.1977).

■ The trust and limited partnership situations discussed above are only two examples of the numerous qualifications and exemptions included by Congress in the IET statute. It is indeed unfortunate for Wilkin that his situation does not fit within any of those statutory exceptions, but it is not within the power of this Court to interpret the IET statute so as to create an exception not intended by Congress. It is our conclusion that the IET was properly computed based upon the entire purchase price of the Canadian securities.

Wilkin's second major argument on appeal is that he should not be subject to penalties for failing to file the IET returns. The Internal Revenue Code of 1954 provides for a penalty of 5 percent per month, not to exceed 25 percent, for failure to timely file a required tax return, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1).

■ Although the issue of the applicability of the failure to file penalty was raised in the pleadings, it was not argued in the briefing on the motions before the district court. In ruling that the plaintiff was liable for the full amount of the IET tax assessments "together with interest and penalties thereon," the district court did not make any specific findings of fact or conclusions of law regarding the absence of reasonable cause or the presence of willful neglect. In his briefing to this Court, Wilkin points to a number of factors, including his reliance on the advice of his Canadian accountants and the complexity of the IET statute, that raise doubts regarding the applicability of statutory penalties for his failure to file the IET returns. Under these circumstances, summary judgment with respect to the penalty assessments was improper. We reverse and remand to allow the parties to develop a more complete factual record for initial determination of this issue by the district court.

The last issue raised by Wilkin on appeal is the availability of a statutory exemption from the IET for certain of his shares of

Canadian Homestead Oils, Ltd. Because this issue was never raised in the court below we will not consider it for the first time here. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

We reverse summary judgment on the assessment of penalties and affirm in all other respects. Each side will bear its own costs.

REVERSED IN PART AND AF-FIRMED IN PART.