**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JAN 14 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILLIAM JACKSON KITCHENS, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> RICHARD PIERCE, Sheriff; MARGARET MIMS, Asst. Sheriff; GARY JOHNSON, Lieutenant, Classification; MONICA MUELLER GARCIA; DERRICK WATKINS; NORA VARELA, <br><br> Defendants - Appellees. | No. 10-15737 <br><br> D.C. No. 1:05-cv-01567-DCB <br> Eastern District of California, <br> Fresno <br><br><br> ORDER <br> AMENDING MEMORANDUM |

Before: WALLACE and BEA, Circuit Judges, and RESTANI, Judge.*

The memorandum disposition filed June 14, 2013 is hereby amended. An amended disposition is filed concurrently with this order.

With these amendments, Judge Bea and Judge Restani have voted to deny the petition for panel rehearing. Judge Wallace's dissent from the denial of panel rehearing is attached hereto. Judge Bea has voted to deny the petition for rehearing

---

\* The Honorable Jane A. Restani, Judge for the U.S. Court of International Trade, sitting by designation.

en banc, and Judge Restani has so recommended.  Judge Wallace recommends en banc rehearing.

*Kitchens v. Pierce, et al.*, No. 10-15737

WALLACE, Circuit Judge, dissenting from the denial of the petition for rehearing:

In the amended memorandum disposition, the majority asserts that "[b]ecause no policy from 'higher authority' specified how SVPs housed in Isolation or the Hole must be treated, a question of material fact exists as to Mims' authority to affect the conditions afforded to SVPs in those locations." In reaching this conclusion, the majority errs both procedurally and substantively. As to the first, there is no "question of material fact," because Kitchens presented *no evidence* before the district court as to Mims's putative "authority" over these conditions. Consequently, the district court was correct to grant summary judgment to Mims on this issue. As to the second, the panel errs by holding, in effect, that Mims may be held liable under a theory of *respondeat superior* for the actions of jail employees under her supervision. This runs contrary to *Ashcroft v. Iqbal*, in which the Supreme Court held that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." 556 U.S. 662, 676 (2009). For both of these reasons, I dissent from the denial of the petition for rehearing.


I.

1

Before the district court, Kitchens made the unsupported assertion that Mims, as Assistant Sheriff, was "empowered with the authority to effectuate policies and procedures within the [jail] facility." The district court rejected this argument on the ground that Kitchens had "offered no evidence that Sheriff Mims effectuated any policies or procedures related to inmate classification when she was Assistant Sheriff."

In its discussion of this issue, the district court considered a *pro se* pleading filed by Kitchens. In that pleading, which Kitchens made in support of his motion for summary judgment, Kitchens asserted that Mims "was empowered with the authority to effectuate policies and procedures within the [jail] facility." This was a verified pleading, insofar as Kitchens signed it and declared that it was true "under the penalty of perjury." Mims did not herself present any evidence as to this issue. Instead, she argued that Kitchens had failed to present any evidence to raise a triable issue of fact as to this claim, and therefore that summary judgment in her favor was appropriate.

Because Kitchens did not allege any *facts* to substantiate his assertion regarding Mims's authority, the district court's summary judgment in favor of Mims as to this issue could have been affirmed on that ground alone. *See, e.g., Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 713–14 (9th Cir. 2010) (explaining

2

that the district court "did not err in granting summary judgment" against a plaintiff who had "failed to allege any facts supporting [his] claim" that the defendant had a "policy, practice, or custom that was violative of his rights"). Under our precedents, a party cannot establish a disputed question of material fact, and thereby avoid summary judgment, by making a "bare assertion" that is devoid of "any legal or factual support." *DeNieva v. Reyes*, 966 F.2d 480, 486 (9th Cir. 1992).

This rule applies to *pro se* litigants, like Kitchens, just as much as it applies to any other party. Our decision in *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004), is not to the contrary. In *Jones*, we held that when a litigant appears *pro se*, the court "must consider as evidence . . . all of [his] contentions offered in motions and pleadings, where such contentions are based on *personal knowledge* and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Id.* at 922–23 (emphasis added). It is important to recognize that this is a narrow exception to the general rule that a nonmoving party may survive summary judgment only if he presents evidence of "sufficient caliber and quantity" to create a genuine issue of material fact. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989), *citing Anderson v. Liberty Lobby, Inc.*,

3

477 U.S. 242, 254 (1986).

In particular, this exception *solely* applies if the *pro se* litigant's contentions are based on "personal knowledge." In *Jones*, we considered a free exercise claim brought by a *pro se* litigant. The district court had granted summary judgment to the defendants, on the ground that the plaintiff had failed to explain how a "general denial of access to religious services" denied him the "ability to practice his own religion." *Jones*, 393 F.3d at 935. We reversed summary judgment as to this claim, on the ground that the plaintiff "was pro se and concluded [a pleading] with a signed statement attesting under penalty of perjury to [its] truth," which meant that his "explanation of his religious beliefs qualifie[d] as evidence for the purpose of opposing a summary judgment motion." *Id.*

*Jones* cited three cases on behalf of the proposition that a *pro se* litigant's verified pleadings may constitute evidence at summary judgment, if they are "based on personal knowledge." *Id.* at 923. First, in *McElyea v. Babbitt*, we likewise considered a *pro se* litigant's free exercise claims regarding practice of his religion in prison. 833 F.2d 196, 197 (9th Cir. 1987). There, the evidence considered by the court consisted of the prisoner's allegations that "regular Sabbath services" were not held in his prison, that he did not receive a kosher diet in prison, that the religious library did not "contain Jewish reading material," and

4

that he was "refused permission to attend a special High Holy Day service." *Id.* at 198–99. Second, in *Johnson v. Meltzer*, we considered a litigant's assertions regarding statements that had been made to him personally by a deputy. 134 F.3d 1393, 1399–1400 (9th Cir. 1998). Finally, in *Schroeder v. McDonald*, we also considered a litigant's assertions regarding two statements that had been made to him personally by "correctional staff members at [his] minimum security facility." 55 F.3d 454, 460 (9th Cir. 1995).

Thus, in all four of these cases, the assertions "consider[ed] as evidence" by us were things that were truly within the *pro se* litigant's "personal knowledge," either because (1) they were statements about his own religious beliefs; (2) they were statements about facts of his daily life in prison; or (3) they were statements of what he had been told by another person. This makes sense. It is unclear, for instance, what evidence a *pro se* litigant could offer regarding his own religious beliefs other than a statement, signed under penalty of perjury, of what those beliefs are.

Our cases addressing this "personal knowledge" exception for *pro se* litigants derive from earlier cases interpreting Fed. R. Civ. P. 56(e), which–in a previous version–stated that a party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial" in the

5

form of "affidavits or as otherwise provided in this rule."[1]  *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).  As we explained in *Lew*, a litigant's verified complaint may be "treated as an affidavit" for purposes of opposing a motion for summary judgment, so long as "the complaint is based on personal knowledge and sets forth facts admissible in evidence *and* to which the affiant is competent to testify."  *Lew*, 754 F.2d at 1423 (citation omitted) (emphasis added).  Again, this makes sense.  If, for instance, the plaintiff in *Jones* had been called to testify at trial as to his own religious beliefs, he surely would have been competent to do so.

By contrast, if Kitchens were called to testify at trial as to Mims's "authority to effectuate policies and procedures" at the Fresno County Jail, what could he possibly say that would be admissible in court?  It is clear that Kitchens would not be competent to testify as to Mims's authority within the jail, because he has no "personal knowledge" of what Mims was "empowered with the authority to effectuate" there.

A *pro se* litigant may assert any number of things in his pleadings, "verified" or not.  He may assert that Freemasons run the country, that the moon is made of

---

[1]  In 2010, Rule 56 was reorganized: some aspects of what was formerly Rule 56(e) were transferred to Rule 56(c), while others were "relocated or omitted."  *See, e.g.*, *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 567–68 (7th Cir. 2012) (discussing the revisions).  This reorganization does not affect the issues under consideration here.

6

green cheese, or that all Cretans are liars. But, because he would lack "personal knowledge" of the truth of any of those assertions, we would not treat them as *evidence* sufficient to defeat a summary judgment motion. In the same way, Kitchens, as a detainee who was briefly held in the Fresno County Jail, lacks any personal knowledge of that jail's bureaucratic hierarchy or the "authority" invested in its various officials. Therefore, his assertions as to this matter cannot be regarded as evidence of sufficient "caliber and quantity" to create a genuine issue of material fact.

## II.

But even if Kitchens had presented admissible evidence of Mims's authority within the jail, which he has not, he would still not be able to establish liability. In essence, Kitchens's claim against Mims is based on *respondeat superior*, because the claim is not based on any action undertaken by Mims, but instead is based on what was done by jail employees under her supervision. Such a claim is necessarily predicated on the theory of *respondeat superior*.

However, the Supreme Court, in *Ashcroft v. Iqbal*, has made clear that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." 556 U.S. 662, 676 (2009). As the Supreme Court explained in *Iqbal*, "vicarious liability is

7

inapplicable" to suits–like Kitchens's–that are brought under section 1983. *Id.*

Instead, a plaintiff bringing a section 1983 action "must plead that each

Government-official defendant, through the official's *own individual actions*, has

violated the Constitution." *Id.* (emphasis added).

Our court has been reluctant to apprehend *Iqbal*'s clear teaching that

government officials may not be held liable under a theory of *respondeat superior*.

*See, e.g.*, *Maxwell v. Cnty. of San Diego*, 697 F.3d 941, 962–63 (9th Cir. 2012)

(Ikuta, J., dissenting) (explaining that, under *Iqbal*, the defendants could not be

held liable for the "allegedly unconstitutional acts of their subordinates"); *OSU*

*Student Alliance v. Ray*, 699 F.3d 1053, 1079–80 (9th Cir. 2012) (Ikuta, J.,

dissenting) (explaining that "to state a claim under § 1983 against a government

official, a plaintiff must allege that the official's 'own misconduct' violated the

plaintiff's constitutional rights") (citation omitted); *Williams v. Cnty. of San Mateo*,

487 F. App'x 344, 346–47 (9th Cir. 2012) (Ikuta, J., dissenting) (explaining that

the "Supreme Court has made it clear that government officials are not liable for

the misdeeds of their subordinates"); *Starr v. Cnty. of Los Angeles*, 659 F.3d 850,

854–55 (9th Cir. 2011) (O'Scannlain, J., dissenting from the order denying

rehearing en banc) (explaining, in a dissent joined by seven other judges, that the

majority had erred by effectively "inserting *respondeat superior* liability into

8

section 1983 despite the Supreme Court's admonition" to the contrary in *Iqbal*).  I join my voice to this chorus.

FILED

JAN 14 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

<table>
<tr><td>

WILLIAM JACKSON KITCHENS,

           Plaintiff - Appellant,

  v.

RICHARD PIERCE, Sheriff;
MARGARET MIMS, Asst. Sheriff;
GARY JOHNSON, Lieutenant,
Classification; MONICA MUELLER
GARCIA; DERRICK WATKINS; NORA
VARELA,

           Defendants - Appellees.

</td><td>

No. 10-15737

D.C. No. 1:05-cv-01567-DCB

AMENDED
MEMORANDUM[*]

</td></tr>
</table>

Appeal from the United States District Court
for the Eastern District of California
David C. Bury, District Judge, Presiding

Argued and Submitted October 16, 2012
San Francisco, California

Before: WALLACE and BEA, Circuit Judges, and RESTANI, Judge.[**]

    William Kitchens appeals the district court's summary judgment in favor of

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable Jane A. Restani, Judge for the U.S. Court of International Trade, sitting by designation.

Appellees, Margaret Mims and Gary Johnson ("County Defendants") and Derrick Watkins, Monica Garcia, and Nora Varela ("Transportation Defendants"). In this 42 U.S.C. § 1983 action, Kitchens claims his constitutional rights were violated when he was transported and detained pending adjudication of his civil commitment as a sexually violent predator ("SVP"). We affirm the district court's summary judgment in favor of Johnson and the Transportation Defendants but reverse the district court's summary judgment in favor of Mims.

Detainees awaiting civil commitment proceedings are entitled to conditions at least as favorable as those provided to individuals civilly committed and to all criminal detainees. Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). A rebuttable presumption of punitive treatment arises when an SVP is detained in "conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held." Id. To rebut that presumption, the government may not rely on generalized assertions of the need to separate SVPs from the general population, as required by California law. Id. at 934. California Penal Code sections 1610 and 4002(b) also require SVPs be administratively segregated and not deprived of privileges.

Kitchens' detention in Isolation reveals conditions that are substantially worse than those of the criminal detainees in administrative segregation

2

("MSEG"), giving rise to a presumption of punishment.  The County Defendants

failed to rebut this presumption because they have proffered only generalized jail

management concerns for support, a position rejected in Jones.  See 393 F.3d at

934.  Kitchens' conditions in Isolation were actually worse than the

unconstitutional ones clearly described in Jones.[1]  Kitchens continued to

experience worse treatment than criminal detainees while in the Hole.  Because the

County Defendants failed to proffer evidence to rebut the presumption of

punishment, summary judgment in their favor was improper.  They may produce

additional evidence to rebut the presumption on remand.

Although Kitchens may have a cognizable claim that his constitutional rights

were violated with respect to privileges, he chose to sue some defendants who do

not bear responsibility for the deprivation.  In section 1983 actions, employers and

supervisors are not automatically liable for constitutional torts committed by their

employees.  Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007), vacated on

other grounds, 556 U.S. 1256 (2009).  Instead, a plaintiff must prove that the

supervisor personally committed the tort, set in motion events which he knew or

reasonably should have known would cause the alleged constitutional harm, or

---

[1] In view of the conditions described in Jones, the County Defendants' assertion of qualified immunity here is without merit.

acquiesced in a constitutional deprivation by subordinates. See id.; see also Moss v. U.S. Secret Serv., 675 F.3d 1213, 1231 (9th Cir. 2012).

The affidavits submitted by the County Defendants support Kitchens' argument that his housing in both Isolation and the Hole were pursuant to official jail policies.[2] Although the County Defendants argued in their briefs that these policies were set by higher authorities, who they were bound to follow, counsel for County Defendants conceded at oral argument that these policies related only to the locations to which SVPs were assigned, not to the privileges afforded to prisoners in those locations. Because no policy from "higher authority" specified how SVPs housed in Isolation or the Hole must be treated, a question of material fact exists as to Mims' authority to affect the conditions afforded to SVPs in those locations. In particular, the issue is whether, in the absence of a policy, Mims, as the person who "oversaw jail operations" and "in charge of the Fresno County Jail," had the authority to ensure that SVPs would be afforded better conditions than others housed in Isolation or the Hole. A reasonable trier of fact could conclude that she controlled Kitchens' circumstances of confinement and is thus potentially liable under a supervisor theory of liability. There is no reason to

---

[2] Kitchens' housing in MSEG admittedly was not based on any jail policy, and therefore, he has failed to support this part of his § 1983 claim.

4

conclude, however, that Johnson, as a classification officer, had any policy-making authority in terms of the privileges afforded to particular prisoners, and therefore no question of fact exists as to his involvement in the jail policy. Accordingly, Johnson is not liable for Kitchens' conditions as a matter of law.

Kitchens also argues that County Defendants violated his Fourth Amendment rights when they subjected him to a "strip search" upon entering the jail. Strip searches are constitutionally permissible, even if not based on reasonable suspicion, when routinely conducted by prison officials on inmates as they enter the prison's general population. Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510, 1523 (2012). Because Kitchens was not subjected to a full strip search, as the petitioner in Florence was, and because Kitchens was housed, at least at some point, in an area with other prisoners, his rights were not violated. Kitchens also argues that the Transportation Defendants violated his substantive and procedural due process rights when they transported him handcuffed to the Fresno County Jail in the same compartment as criminal detainees. In Bagent v. Pierce, we stated that California Penal Code sections 1610 and 4002 were inapplicable to the brief time an SVP spends inside a bus because those statutes only address confinement in a "room," "housing," or "facility." 463 F. App'x 636, 637 (9th Cir. 2011) (unpublished). Our decision in Bagent, while non-

5

precedential, is consistent with the legislative history of sections 1610 and 4002. Accordingly, Kitchens' procedural due process rights were not violated. Similarly, Kitchens was not deprived of his substantive due process rights because the <u>Jones</u> presumption of punishment has been overcome by the Transportation Defendants' asserted justification of segregating juveniles and women within the vehicle, combined with obvious space limitations.

For the foregoing reasons, we **REVERSE** the district court's summary judgment with respect to Defendant Mims. Additionally, we **AFFIRM** the district court's summary judgment in favor of Defendant Johnson and the Transportation Defendants. The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**